**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

JORGE HANE,

      Debtor.     /

COLTEFINANCIERA, S.A. and
BLUE BANK INTERNATIONAL, N.V.,

      Plaintiff,

v.

JORGE HANE,

      Defendant.     /

Case No. 16-25954- LMI
Chapter 7

Adv. Pro. No. 17-01234-LMI

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Jorge Hane (the "Defendant") files this Motion for Partial Summary Judgment as to Count I of Plaintiff Blue Bank International, N.V.'s ("Blue Bank") *Amended Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge pursuant to Sections 523 and 727 of the Bankruptcy Code*. In support of the instant Motion, the Defendant submits the following:

    **Exhibit A.** Affidavit of Jorge Hane (the "Hane Affidavit").

    **Exhibit B.** Plaintiffs' Amended Complaint (D.E. #32).

    **Exhibit C.** Transcript of February 2, 2018 deposition of Carlos Zambrano as corporate representative of Blue Bank pursuant to Fed.R.Civ.P. 30(b)(6).

    **Exhibit D.** Transcript of April 24, 2018 deposition of Nelson Mezerhane.

    **Exhibit E.** The Defendant's First Set of Interrogatories to Blue Bank (the "Blue Bank Interrogatories").

1

> **Exhibit F.** Blue Bank's Response to the Blue Bank Interrogatories (the "Blue Bank Interrogatory Response").
>
> **Exhibit G.** Email dated October 29, 2015 from Jorge Hane to Nelson Mezerhane[1].
>
> **Exhibit H.** Email dated November 4, 2015 at 7:22 p.m. from Jorge Hane to Cornelius Rojer.
>
> **Exhibit I.** Email dated November 4, 2018 at 8:29 p.m. from Jorge Hane to Cornelius Rojer.

In further support of the instant Motion, the Defendant states as follows:

## I.    INTRODUCTION

The Plaintiff filed this adversary proceeding alleging that the Defendant made material misrepresentations about his and his corporation's financial condition to obtain a business loan from Blue Bank. Based on these allegations, Count I of the Amended Complaint objects to the dischargeability of the Defendant's debts to Blue Bank under 11 U.S.C. §523(a)(2)(A). In *Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953, 956 (11th Cir. 2017), *affirmed in Lamar, Archer & Cofrin, LLP v. Appling,* 2018 U.S. LEXIS 3383 (June 4, 2018), the 11th Circuit held that a debtor's statements respecting his/her financial condition may not be relied upon as the basis to object to the debtor's discharge under §523(a)(2)(A) and may only be the basis for such an objection under §523(a)(2)(B). Therefore, Blue Bank cannot legally sustain its claim under §523(a)(2)(A) summary judgment should be entered in favor of the Defendant on Count I.

To the extent the Court is willing to consider Blue Bank's allegations in Count I under 11 U.S.C. §523(a)(2)(B), the Amended Complaint and subsequent discovery responses identify three written communications by the Defendant which Blue Bank contends were materially misleading. However, as detailed below, these communications cannot conceivably give rise to a non-dischargeability finding– one communication was written to an individual Blue Bank concedes

---

[1] The Debtor has ordered a certified translation of the emails and will file same with the Court if necessary.

2

was not acting on Blue Bank's behalf and the others were miscellaneous internet postings which Blue Bank searched for and identified on its own and were not made by the Debtor to Blue Bank. In light of the foregoing, summary judgment for the Defendant is appropriate.

## II. STATEMENT OF UNDISPUTED FACTS

### A. Background

1. The Defendant commenced his underlying bankruptcy case (Case No. 16-25954-LMI) (the "Main Bankruptcy Case") by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 4, 2016 (the "Petition Date"). Amended Complaint, ¶1.

2. Prior to the Petition Date, the Defendant was involved in the sale of weight loss and health supplements. Hane Affidavit, ¶4.

3. To operate his business, the Defendant utilized a Florida corporation named JorgeHane Laboratories Corp. ("JorgeHane Laboratories"). JorgeHane Laboratories in turn owned a Colombian subsidiary through which products were sold and business was transacted. Hane Affidavit, ¶5.

4. On November 4, 2015, JorgeHane Laboratories took out a $300,000.00 business loan from Blue Bank. Amended Complaint, ¶9a; Hane Affidavit, ¶6.

5. The Blue Bank loan was personally guaranteed by the Defendant. Amended Complaint, ¶9b. In connection with the Blue Bank loan, the Defendant completed a financial application and submitted backup information about himself and JorgeHane Laboratories. Hane Affidavit, ¶6.

6. In May 2016, JorgeHane Laboratories defaulted on the Blue Bank loan. Amended Complaint, ¶9e.

### B. Non-Dischargeability Allegations

7. Count I of the Amended Complaint seeks a judgment of nondischargeability of the Debtor's guaranty of the Blue Bank loan under §523(a)(2). As a basis for relief, the Amended Complaint alleges that the Defendant committed actual fraud under §523(a)(2)(A).

3

8. On January 9, 2018, the Defendant served the Blue Bank Interrogatories upon Blue Bank.

9. On January 26, 2018, Blue Bank served the Blue Bank Interrogatories Response.

10. Interrogatory No. 5 states as follows: "Please identify each and every false statement (written or otherwise) which [Defendant] made to Blue Bank concerning the Blue Bank Loans and include therein, each and the date, type of communication and the parties to such communication." Blue Bank Interrogatories, p.4.

11. Blue Bank responded to this Interrogatory as follows:

> On October 29, 2015, HANE sent an email to BLUE BANK, in connection with his application for a $300,000 loan. Among other things, the email falsely stated that HANE's "full line of weight loss products" and dietary supplements are sold in "approximately 45,000 drugstores in 9 countries in Latin America" and "Reduce Fat-Fast and Jorge Hané himself are brands very well branded in practically all of South America, and some countries in the Caribbean, Europe, Asia and South Africa." There was no mention of the Colombian government prosecution (pending since 2012) that would lead the company to be assessed a fine and seek bankruptcy protection a few months later. He also falsely and affirmatively stated in the same communication that his product Reduce Fat-Fast "has helped millions of people around the world achieve their desired weight loss" and omitted the material fact that he was falsely advertising his products.
>
> On or about November 4, 2015, HANE provided further written information to BLUE BANK falsely stating that HANE (the sole owner and director of his U.S. company JorgeHane Laboratories Corp) distributed his products at over 30,000 points of sale (mostly pharmacies), had a laboratory in Buenos Aires and that his company was then operating in at least eleven countries. This was further confirmed by HANE's misleading email signature that included this website and a list of various Latin American countries under his name. HANE further stated that his U.S. company had assets exceeding $2.5 million at the end of both 2013 and 2014, implying that it had sufficient collateral for the $300,000 loan. There was no mention of the

Colombian government prosecution, even though it had been underway since May 2012.

At all relevant times between August and December 2015, when Blue Bank checked HANE's online presence before approving the loans, HANE also made these or similar written representations on his websites "reducefatfast.com," "jorgehanelaboratories.com" and "jorgehane.com," particularly that HANE himself possessed a distribution network for the company's products of more than 100,000 pharmacies in Argentina, Colombia, Costa Rica, El Salvador, Honduras and Guatemala; and that JorgeHane Laboratories Corp. in the United States was its supplier. These websites were full of false advertising claims, as later established by the Colombian government. HANE failed to disclose this material information to Blue Bank, even though HANE knew that he was falsely advertising his products, that the Colombian government began its false advertising case in 2012, and that the Colombian government was about to assess a fine, seize HANE's products and send HANE's Colombian company into dissolution.

12. To summarize, Blue Bank identifies three false statements which form the basis of its §523 claim: the October 29, 2015 email to Blue Bank (the "October 29 Email"), the "written information" provided by the Defendant on November 4, 2015 to Blue Bank (the "November 4 Correspondence") and facts found by Blue Bank when it "checked Hane's online presence" (the "Blue Bank Google Searches").

    (i)    The October 29 Email

13. The October 29 Email was an email written by the Defendant to Nelson Mezerhane ("Mezerhane") and Violy McCauseland of Violy & Company ("Violy"). Hane Affidavit, ¶7; October 29 Email, p.1. The Email was a one sentence message stating ""Hola Nelson, Te envio un poco mas de informacion sobre jorgehane laboratories y Jorge Hane. Abrazo! Jorge." This translates as "Hi Nelson, I send you a little more information about Jorge Jane Laboratories and Jorge Hane. Hug! George". Attached to the October 29 Email was a CV for the Defendant, which

5

Blue Bank alleges contains the false allegations referenced in the Amended Complaint and in the Blue Bank Interrogatory Response; Hane Affidavit ¶8.

14. Mezerhane is a shareholder of Blue Bank and was a close personal friend of the Defendant. Hane Affidavit, ¶9; Mezerhane Dep. 14:13-15 and 25:5-6.

15. Prior to the issuance of the Blue Bank loans, the Defendant's Columbian business had a factoring loan with Coltefinanciera, S.A. ("Colte"), another lending institution in which Mezerhane is a shareholder. In the summer of 2015, that loan had gone into default. To assist the Colombian entity in finding a new outside investor or buyer and to rescue the Colte loans, Mezerhane introduced the Defendant to Violy. Violy was a financial advisor Mezerhane had previously worked with. Hane Affidavit, ¶10.  Mezerhane Dep. 36:10-37:6.

16. According to Blue Bank and Mezerhane, Mezerhane is a passive shareholder who is not on the bank's credit committee, has no specific role at the bank and does not make credit decisions. Blue Bank Dep. 35:15-25 – 36: 1-4.

17. Blue Bank's corporate representative testified that Mezerhane did not play a role in its assessment of the Defendant or JorgeHane Laboratories' creditworthiness. Blue Bank Transcript Blue Bank Dep. 120:14-121:1 (stating that Blue Bank did not issue loans based on Mezerhane's recommendations because "the Central Bank authorities [of Curucao] do not allow that, that we issue credits without doing the due diligence and just following the recommendation of a person that is known to the bank.").

18. Blue Bank's corporate representative also specifically testified that when Mezerhane received the October 29 Email, he did not receive it on behalf of Blue Bank. *See* Blue Bank Dep. 93:1-2 ("Q. So when Mr. Mezerhane received this email, he received it on behalf of Blue Bank? A. No.").

19. Mezerhane himself concurred that he is not an officer or director of Blue Bank, has no involvement in credit decisions for Blue Bank, does not serve on the credit committee and did

6

not dictate Blue Bank's decision to extend credit to JorgeHane Laboratories. Mezerhane Dep. 21:24-22:12 and 43:25-44:6 (stating "I only recommended [Defendant] as a friend for them to analyze the credit through their bank.")

20. To summarize, based on the admissions of Blue Bank and Mezerhane in their depositions (a) Mezerhane had no involvement in Blue Bank's assessment of JorgeHane Laboratories' creditworthiness and did not otherwise participate in the due diligence process; and (b) the Defendant's communications to Mezerhane are not communications to Blue Bank for the purposes of due diligence.[2]

### (ii) The November 4 Correspondence

21. On November 4, 2018, Hane sent two emails to Blue Bank President Cornelius Rojer ('Rojer"): one email at 7:22 p.m. attached hereto as Exhibit J (the "First November 4 Email") and a second email at 8:29 p.m. attached hereto as Exhibit K (the "Second November 4 Email"). Hane Affidavit, ¶11.

22. The First November 4 Email states as follows:

> Sr. Rojer,
> Por medio de la presente carta le solicito un Prestamo de US$300.000
> Acepto los intereses del 10% annual , con pago de intereses mensuales.
> Puede usted contar como garantia del mismo , mi aval personal.
> Me comprometo como minimo una primera amortizacion del 25% del capita adeudado para que asi me puedan renovar, si yo lo solicito, el saldo remanente al final de ese period de un ano.
> Por favor me avisa cuando esta dicho dinero disponible en mi cuenta., para poder hacer algunas transferencias. Tengo entendido que seria hoy o a mas tardar manana.
> Muchas gracias.

This translates as

---

[2] Defendant does not necessarily agree with these assertions and, if this Motion is denied, may challenge them at trial. However, the testimony of Blue Bank and Mezerhane cannot now be credibly disavowed by them, and for the reasons detailed below, is alone sufficient grounds for the Court to grant summary judgment.

7

> Mr. Rojer,
> Through this letter I request a loan of US $ 300,000
> I accept 10% annual interest, with monthly interest payments.
> You can count as my guarantee, my personal guarantee.
> I am committed as a minimum a first amortization of 25% of the capital owed so that they can renew me, if I request it, the remaining balance at the end of that period of one year.
> Please notify me when said money is available in my account, to be able to make some transfers. I understand that it would be today or at the latest tomorrow.
> Thank you very much.

23. The Second November 4 Email states

> Sr. Rojer,
> Por medio de la presente le solicito constituya un certificado de deposito de $100.000 por 30 dias. Posteriormente le dare instrucciones acerca del uso de este dinero.
> Le agradezco me informe cual es el interes que su banco me pagara a cambio de este certificado de deposito.
> Muchas gracias.,

This translates as:

> Mr. Rojer,
> By means of this I request you to constitute a deposit certificate of $ 100,000 for 30 days. Later I will give you instructions about the use of this money.
> I thank you for informing me of the interest that your bank will pay me in exchange for this deposit certificate.
> Thank you very much.

24. Both emails contained the Defendant's standard email signature, which was used on each and every email sent by the Defendant from his business email account. This included the following set of images:

8






Hane Affidavit, ¶12.

25.     The email signature essentially contained the Defendant's contact information and a list of the countries in which the Defendant and his companies had done business at various points. At no point did the Defendant direct or invite Blue Bank to consider the email signature as part of its due diligence or as a statement regarding his financial condition upon which Blue Bank may rely. Hane Affidavit, ¶ 13.

26.     To the extent that the email signature actually provides financial information, it only makes reference to the countries in which the Defendant's weight loss products were sold in South and Central America. These statements are true. Hane Affidavit, ¶ 14.

        *(iii)     The Blue Bank Google Searches*

27.     The Blue Bank Interrogatory Response states that "Blue Bank checked [the Defendant's] online presence before approving the loans." Neither this response nor any testimony from Blue Bank's representative ever identified a single online statement which Blue Bank relied on.

28.     In Blue Bank's response to the Defendant's Request for Production of Documents, Blue Bank delivered a Dropbox folder entitled "Webpages." The folder contained a selection of online material, all of which appears to have been created after the Blue Bank loans were issued. Specifically, the material is either undated or has date stamps dated in 2016, 2017 or 2018 which is after the Blue Bank loan issued in 2015. Moreover, most of the material was not created by the Defendant but by third party news organizations. Hane Affidavit, ¶15.

29. At no point prior to the loans did the Defendant instruct or direct Blue Bank to obtain due diligence information from the internet nor did the Defendant or his companies create the content specifically for Blue Bank. Hane Affidavit, ¶16.

30. Accordingly, to the extent Blue Bank did actually perform the Blue Bank Google Searches, it did so on its own initiative. This was confirmed by Blue Bank's corporate representative at his deposition in the following exchange:

> Q. …In terms of the false statements that Blue Bank alleges Mr. Hane made in connection with the loans….What other false representations did Mr. Hane make?
>
> A. When I reviewed the credit file, it reflects the different documents that were obtained through the internet about the companies of the group Jorge Hané, the ones that were successful and the expectations that the company had about the near future. And they reflect constantly the growth of the product that they are producing.
>
> Q. Okay. And these were internet searches conducted by the credit manager?
>
> A. Within the procedures of following the companies, it is included or contemplated that you should do a follow up of information through the web.

Blue Bank Dep. 73:23-74:13.

### III. MEMORANDUM OF LAW

  A. **Legal Standard for Summary Judgment**

A court should enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c) (made applicable to this proceeding by Fed. R. Bankr. P. 7056). A party moving for summary judgment bears the initial burden of showing that there are no

genuine issues of material fact that should be decided at trial. When that burden has been met, the burden shifts to the non-moving party to demonstrate the existence of a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to avoid summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy*, 68 F.3d at 1222.

### B.     §523(a)(2)(A) Does Not Apply to this Proceeding

Blue Bank's Amended Complaint styles itself as an action under 11 U.S.C. §523(a)(2)(A). Paragraph 5 of the Amended Complaint explains that "this is an adversary proceeding in which the PLAINTIFFS… are seeking a determination as to the dischargeability of the debt owed by the Debtor to PLAINTIFFS under Bankruptcy Code § § 523(a)(2)(A)." Similarly, the title portion of the non-dischargeability Count of the Complaint (Count I) seeks relief only under §523(a)(2)(A).

As detailed above, the allegations of the Amended Complaint themselves are essentially that the Defendant provided false information concerning himself and his companies to Blue Bank in order to induce Blue Bank to issue loans to JorgeHane Laboratories. The Amended Complaint alleges numerous non-written misrepresentations and concealments in this regard as well as the three written misrepresentations also contained in the Blue Bank Interrogatory Response. However, as detailed below, the law is now settled that Blue Bank cannot obtain a judgment of non-dischargeability under §523(a)(2)(A) under the present facts.

11 U.S.C. §523 provides in relevant part as follows:

11

> (a) A discharge does not discharge an individual debtor from any debt--
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> (B) use of a statement in writing--
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive;

As explained by the 11th Circuit Court of Appeals, the Bankruptcy Code "treats debts incurred by a statement 'respecting the debtor's financial condition' differently from other debts." *Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953, 956 (11th Cir. 2017), *affirmed in Lamar, Archer & Cofrin, LLP v. Appling,* 2018 U.S. LEXIS 3383 (June 4, 2018). All fraud other than a statement respecting the debtor's financial condition is treated by §523(a)(2)(A) and accordingly, so long as a creditor can demonstrate reasonable reliance "a debtor cannot discharge a debt obtained by any type of fraudulent statement, oral or written." *Appling*, 848 F. 3d at 956. But "if a statement is made 'respecting the debtor's financial condition' then [§523(a)(2)(B)] governs" and "to avoid discharge…a creditor must show reasonable reliance and that the statement was intentional, materially false, and in writing." *Id*. at 957. Accordingly, "a debt incurred by an oral, fraudulent statement respecting the debtor's financial condition can be discharged in bankruptcy." *Id*.

In *Appling*, the 11th Circuit ruled that if the alleged misrepresentation concerns even a single asset of the debtor's then the stricter provisions of §523(a)(2)(B) apply and, to be excepted from discharge, the statement must be in writing. *Id*. at 958-59. The 11th Circuit based this

12

determination on the plain meaning of the statute, *Id.* at 958-60, and a "perfectly sensible" policy consideration requiring offensive statements be in writing to promote accuracy and predictability in bankruptcy disputes. *Id.* at 960. Accordingly, a plaintiff seeking non-dischargeability based on misrepresentations concerning a debtor's financial condition cannot advance a case under §523(a)(2)(A). *See Material Prods., Int'l, Ltd. v. Ortiz (In re Ortiz)*, 441 B.R. 73, 80-81 (Bankr. W.D. Tex. 2010) (granting debtor judgment on the pleadings when plaintiff filed an adversary under §523(a)(2)(A) alleging debtor unstated encumbrances on assets). As noted above, the 11th Circuit's *Appling* decision was recently affirmed by the United States Supreme Court.

Blue Bank alleges that the Defendant made material misrepresentations concerning his and his companies' financial condition in order to obtain the Blue Bank loans. Under *Appling* a creditor cannot be afforded relief under §523(a)(2)(A) under such circumstances. Accordingly, since the Amended Complaint expressly seeks relief only under §523(a)(2)(A), summary judgment in favor of the Defendant is appropriate.

### C. The Alleged Written Misrepresentations Cannot Support a Judgment of Nondischargeability

Even though Blue Bank expressly seeks relief only under §523(a)(2)(A), the Amended Complaint and the Blue Bank Interrogatory Response do reference certain writings. Should the Court elect to consider these writings under §523(a)(2)(B) (although such a claim is now time barred), as detailed below, summary judgment in favor of the Defendant is nonetheless appropriate.

The elements of §523(a)(2)(B) are that

> 1) The Debtor made materially false representations in writing respecting the Debtor's financial condition;
>
> (2) The Debtor knew the representations were false at the time that they were made;

13

      (3) The Debtor made the representations with the intention and purpose of deceiving the creditor;

      (4) The Creditor reasonably relied upon the Debtor's materially false representations; and

      (5) The Creditor sustained loss and damages as the proximate result of the misrepresentations.

*In re Gilman*, 31 B.R. 927 (Bankr. S.D. Fla. 1983). *See also In re Siriani*, 967 F.2d 302 (9th Cir. 1992) (noting that the elements trace §523(a)(2)(A) but include the requirement that the misrepresentation be in writing). Neither the October 29 Email, the November 4 Correspondence or the products of the Blue Bank Google Research meet these elements.

    *(i) The October 29 Email*

    The October 29 Email from the Defendant to Mezerhane was, by Blue Bank's own admission, not an email provided to Blue Bank for the purposes of due diligence. Indeed, Blue Bank went to extreme efforts to distance Mezerhane from Blue Bank's lending practices, noting repeatedly in depositions that Mezerhane only referred the Defendant but did not play any role in Blue Bank's due diligence. Similarly, Mezerhane himself repeatedly testified that he was not involved in Blue Bank's lending practices. Accordingly, Blue Bank will not be able to meet the requirement that the allegedly false correspondence was the "proximate cause" of its losses. *See James v. West (In re West)*, 2017 Bankr. LEXIS 52, *68 (Bankr. W.D. Mis. February 24, 2017) (noting "[p]roximate cause requires that a creditor would not have suffered the loss at issue but for a debtor's (or a debtor's agent's) actions. It also requires a creditor to prove that their loss was a foreseeable result of a misrepresentation."). It is simply not credible for Blue Bank to claim that Mezerhane had no role in due diligence and at the same time claim that an email to him was the proximate cause of its damages.

Moreover, as noted above, it is not disputed that the October 29 Email was sent to Mezerhane and Violy in connection with the ongoing restructuring of the Colte loans and in order to help the Defendant find new investors for his companies. As stated in the Mezerhane deposition: "Q. Okay. Why did you refer Mr. Hane to Violy? A. Because Mr. Hane wanted to open a new market and he wanted to better his companies." Mezerhane Dep. 37:4-6. Accordingly, not only was the October 29 Email not sent to Blue Bank but it was sent for a purpose entirely unrelated to the Blue Bank Loan. Accordingly, it cannot satisfy the element of §523(a)(2)(B) requiring that false communications be sent with the intention to deceive the creditor nor can Blue Bank conceivably claim that it reasonably relied upon the email.

*(ii)    The November 4 Correspondence and the Blue Bank Google Searches*

The November 4 Correspondence and the Blue Bank Google Searches will also not be able to satisfy the elements of §523(a)(2)(B). The allegedly false information was contained in internet postings posted to the general public and clearly not provided to Blue Bank as due diligence for the Blue Bank loans. Blue Bank cannot conceivably demonstrate that the information was provided with the specific intent to deceive Blue Bank into issuing loans.

*(iii)    Reasonable Reliance*

Blue Bank will also not be able to satisfy the element of reasonable reliance. "To determine whether a creditor was reasonable in its reliance, a court must consider the totality of the circumstances." *In re Eckert*, 221 B.R. 40, 44-45 (Bankr. S.D. Fla. 1998) (citing cases and identifying factors for a court to consider). Among the factors is "the sophistication of the parties" and "the amount of money involved. The more money there is at stake, the more investigation is required." *Id*. at 45. For Blue Bank to prevail, it will have to show that a financial institution reasonably relied on a one sentence email (the October 29 Email), an email signature (the November 4 Correspondence) and miscellaneous internet research (the Blue Bank Google

15

Searches) in deciding to loan $300,000 to Jorgehane Laboratories. In ruling on summary judgment, the Court must find that there is evidence on which a trier of fact could "reasonably find for the nonmoving party." *Triton Energy Corp.*, 68 F.3d at 1221. Blue Bank's claims do not meet this standard with respect to the reasonable reliance element of §523(a)(2)(B).

## IV.     CONCLUSION

There is no reason the Defendant should be forced to try Blue Bank's §523 claims. The Defendant provided Blue Bank with a financial statement, tax returns and extensive financial information. The Blue Bank Interrogatory Response does not identify any of these documents as containing material misrepresentations. Instead, it relies on the three written items referenced above, none of which could conceivably satisfy the elements of §523(a)(2)(B). Accordingly, summary judgment in favor of the Defendant is appropriate.

WHEREFORE, the Defendant requests the Court enter summary judgment in its favor on Count I of the Amended Complaint and grant such further relief as is deemed just and proper.

### Attorney's Local Rule 2090-1(A) Certification

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

> HOFFMAN, LARIN & AGNETTI., P.A.
> Counsel for Defendant
> 909 North Miami Beach Blvd., Suite 201
> North Miami, FL 33162
> Tel: (305) 653-5555
> Fax: (305) 940-0090
> Email: mshoffman@hlalaw.com
>
> /s/ Michael S. Hoffman
> Michael S. Hoffman
> Florida Bar No.: 41164

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF to Brian J. Recor, Esq. on July 6, 2018.

<u>/s/ Michael S. Hoffman</u>
Michael S. Hoffman