UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:  Case No. 16-25954-LMI
  Chapter 7
JORGE HANE,

      Debtor.
_____/

BLUE BANK INTERNATIONAL, N.V.;  Adv. No. 17-01234-LMI
COLTEFINANCIERA, S.A.

      Plaintiffs,
v.

JORGE HANE,

      Defendant.
_____

**BLUE BANK'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: COUNT I OF ADVERSARY COMPLAINT**

Plaintiff-Creditor Blue Bank International, N.V. ("BLUE BANK") hereby responds to the Debtor-Defendant Jorge Hane's ("HANE" or the "Debtor") Partial Motion for Summary Judgment [ECF 54] as follows and submits the following exhibits:

| | | |
|---|---|---|
| Exhibit 1 | | Declaration of Carlos Julio Caridad Zambrano |
| Exhibit 2 | | Declaration of Nelson Jose Mezerhane Gosen |
| Exhibit 3 | | Deposition of Debtor Jorge Hane |
| Exhibit 4 | | Deposition of Debtor's Spouse Florencia Hane |
| Exhibit 5 | | Organization Chart from the Debtor to Colombian Company |
| Exhibit 6 | | October 29, 2015 Email from Debtor |
| Exhibit 7 | | November 4, 2015 Emails from Debtor |

1

| | |
|---|---|
| Exhibit 8 | Website Printout from Underwriting Review |
| Exhibit 9 | Presentation Hand-Delivered by the Debtor |
| Exhibit 10 | November 4, 2015 Loan Commitment Letter |
| Exhibit 11 | November 25-26, 2015 Emails re Colombian Investigation |
| Exhibit 12 | November 26, 2015 Email from the Debtor |

In further support of its Response, BLUE BANK states the following:

## I.     INTRODUCTION

In Count I, BLUE BANK alleges that the Debtor obtained a $300,000 loan based on **false pretenses** and **material omissions** under Section 523(a)(2)(A). Debtor made numerous statements and representations to BLUE BANK about Debtor's products and sales distribution networks, while hiding the material fact that the Colombian government was wrapping up a years long investigation of false advertising of the same products, and would imminently assess a fine and prohibition of sales on the Debtor's Colombian company.

This wholly-owned Colombian subsidiary – JorgeHane Laboratories, S.A.S. that was liquidated just months after the loan was issued – was the centerpiece of the Debtor's business, and accounted for most of the Debtor's income between 2012 and 2015. It, and its Florida holding company JorgeHane Laboratories Corp., were insiders of the Debtor, who was the sole owner of the companies.

Among other things, the Debtor misrepresented that he had operations in at least ten countries and falsely claimed to have a distribution network of tens of thousands of pharmacies for his products. More importantly, he failed to disclose the pending Colombian false advertising investigation, which he knew likely could (and shortly thereafter did) lead to the failure of all of his business, a significant fine, seizure of his products and his own personal bankruptcy within a year.

He also signed a commitment letter for the BLUE BANK loan falsely stating that there were no legal proceedings or material facts that were not previously disclosed to BLUE BANK. Further, he admits that he used part of the $300,000 business loan proceeds for "personal use," which was likely a further fraud on BLUE BANK because he had represented that the loan was for working capital.

While the Debtor and his wife claimed at deposition that BLUE BANK and "everybody" knew about the Colombian investigation and fine before the November 4, 2015 loan disbursement, BLUE BANK disputes that fact. The Debtor also unsurprisingly claims that he lacked fraudulent intent, that some representations or omissions were non-actionable, or not really intended to be relied on by BLUE BANK. In short, there are genuine issues of material fact that preclude summary judgment on this fraud count under Section 523(a)(2)(A). Accordingly, BLUE BANK respectfully asks that the Motion for Partial Summary Judgment be denied.

## II.     STATEMENT OF MATERIAL FACTS

1.      BLUE BANK does not dispute paragraphs 1-14, 16-19, 21-23 of the Debtor's "Statement of Undisputed Facts." BLUE BANK has additional material facts, which are added below and are the subject of dispute.

2.      In sum, the Debtor made misleading representations to BLUE BANK about himself and his companies in order to obtain a $300,000 loan from BLUE BANK. On November 4, 2015, BLUE BANK issued the $300,000 loan based on the Debtor's representations and failure to disclose material facts. (Ex. 1, Caridad Decl. ¶4.)

3.      At all times in 2015, the Debtor owned 100% of JorgeHane Laboratories Corp., which owned 100% of JorgeHane Laboratories, S.A.S., a Colombian company. (Ex. 5 [org chart confirmed by the Debtor]; (Caridad Decl. ¶10.) The Colombian operations accounted for more than 50% of all revenues for the Debtor. (Ex. 3 [Debtor Depo.] at 109 ("more than 50% for sure… it was

3

always the most important one")]; Caridad Decl. ¶10.). There are no business records of JorgeHane Laboratories Corp. "because that company was just selling product and to Colombia getting paid so everything was done with the business down there in Colombia." (Debtor Depo. at 60; Florencia Hane Depo at 132 [Colombian operations most important to JorgeHane Laboratories Corp].)

<u>Misrepresentations and False Pretenses Prior to Obtaining November 4, 2015 Loan</u>

4.    The false pretenses that led BLUE BANK to lend the $300,000 include the successful image that HANE fostered at Fisher Island Club, a private club and deep-water marina in Miami-Dade County, by showing off what were allegedly his expensive sports cars (including a McLarin) and yachts (including a 72 foot Sunseeker) and specifically stating to Mr. Mezerhane, who is the loan referral source to BLUE BANK, how his weight loss and nutritional supplement businesses was so successful. (Ex. 2, Mezerhane Decl. ¶3; Debtor Depo. at 26-27 (confirming the Debtor's cars and boats.)

5.    On or about October 25, 2015, HANE told Mr. Mezerhane that he wanted to obtain a $300,000 loan in U.S. dollars from BLUE BANK for working capital purposes in his weight loss and nutritional supplement businesses. (Mezerhane Decl. ¶4.) Mr. Mezerhane then asked HANE to send information about his company to send to BLUE BANK. (Mezerhane Decl. ¶5.)

6.    On October 29, 2015, HANE sent an email to Mr. Mezerhane with the intent that it would be used for BLUE BANK's evaluation of the $300,000 loan application. Mr. Mezerhane then forwarded the email to BLUE BANK. (Mezerhane Decl. ¶5-6; Caridad Decl. ¶5.) The Debtor disputes this and says his intent in sending the email was not in connection to the BLUE BANK loan. (Movant's SUF para. 15). The Debtor nearly acknowledges summary judgment is inappropriate in footnote 2, when he states BLUE BANK "does not necessarily agree with these assertions" regarding the intent and meaning of the October 29, 2015 Email (Motion at 7, fn.2.)

4

7. On or about November 2, 2015, HANE also hand-delivered to Mr. Mezerhane's office rosy presentation about the Debtor's companies, their geographic reach and the multitude of products for further consideration for the BLUE BANK loan. (Mezerhane Decl. ¶7; Ex. 9 [hand-delivered presentation]; Debtor Depo. at 151, 162.) The Debtor admits that he is unsure that the presentation was accurate, that it "could be an old document," and that some products might not have ever been sold ever, or at least after 2012. (See Debtor Depo at 162-168.)

8. BLUE BANK disputes the Debtor's statement that it cannot rely on the Debtor's own statements to Mr. Mezerhane, made within the same week that the Debtor specifically asked Mr. Mezerhane to help him obtain a loan from BLUE BANK, and within days of submitting a loan application.

9. The October 29, 2015 email and attachment, as well as the hand-delivered presentation, contained misrepresentations. For example, HANE represented to BLUE BANK that he possessed a network of tens of thousands of pharmacies selling his products. (Ex. 6.) The Debtor represented to BLUE BANK that he had operations in numerous countries (other than Argentina and Colombia), and a wide variety of products. (Ex. 6 [Oct. 2015 email]; Caridad Decl. ¶5.)

10. On November 4, 2015, the Debtor made further misrepresentations and false pretenses by including in his emails to BLUE BANK a reference to three different logos of companies, several countries where the Debtor *did not operate* and to a website that contained misrepresentations: www.jorgehanelaboratories.com and a list of Latin American companies (Argentina, Colombia, Ecuador, El Salvador, Costa Rica, Panama, Nicaragua, Honduras, Guatemala, Peru). (Ex. 7 [Nov. 2015 emails]; Caridad Decl. ¶6.) BLUE BANK disputes the Debtor's assertion that BLUE BANK could not rely on these misrepresentations because it was allegedly puffery or on "each and every email sent by the Defendant from his business email

account." (Movant's SUF para. 24, 25). BLUE BANK further disputes the Debtor's claim that the representations are true at the time they were made, just because the Debtor allegedly operated in some of these places in the past. (Movant's SUF para. 26).

11.     Between late October and early November 2015, BLUE BANK also reviewed jorgehane.com and jorgehanelaboratories.com – HANE's corporate websites referenced in HANE's communications for publicly available statements by HANE about his own business.[1] (Caridad Decl. ¶7-8.) Several of the websites published by HANE and relied on by BLUE BANK to make the $300,000 loan contained misrepresentations. (Ex. 8 [printout from BLUE BANK's 2015 underwriting file, as well as jorgehane.com from the Internet Archive as of October 22, 2015]). The Debtor has admitted that he did not have operations in most of those countries in late 2015, when he sent the emails to BLUE BANK. (See Debtor Depo. at 137-138 (explaining that the number of countries stated in advertising was "just a marketing tool").)

12.     BLUE BANK disputes the Debtor's statement that the Debtor did not "instruct or direct" BLUE BANK to conduct due diligence on the Internet. (Movant's SUF para. 29-30). It also does not matter whether, as the Debtor asserts, the allegedly false "content was created specifically for Blue Bank." It is standard procedure for banks, including BLUE BANK, to conduct online searches on borrowers as part of their underwriting process. (Caridad Decl. ¶7-8.) The Debtor's email communications to BLUE BANK to obtain the loan specifically refer BLUE BANK to jorgehane.com and jorgehanelaboratories.com. (Ex. 6, 7.) The website address is also plainly an

---

[1] The Debtor incorrectly asserts that a Dropbox folder entitled "Webpages" has the online statements relied upon by BLUE BANK in its October-November 2015 due diligence. BLUE BANK produced the hard copy of the underwriting file (including websites printed in 2015) at the Rule 30(b)(6) deposition. The 2016-2018 website printouts referenced in Movant's SUF para. 27 (obviously created after the November 2015 loan disbursement) show news reports of the Colombian government fine for false advertising, a description of the Debtor's downfall and the Debtor's own post-bankruptcy interviews and related articles).

invitation to review the website, which BLUE BANK relied on, in part, in order to approve the Debtor's $300,000 loan.

13.     When applying for the BLUE BANK loan, the Debtor intended the loan to be partly for personal use, but concealed that fact from BLUE BANK. The Debtor misrepresented to BLUE BANK that the loan was for "working capital purposes." (Ex. 10 [commitment letter]; Caridad Decl. ¶9.) In fact, HANE took at least some of the loan proceeds for personal use. (Debtor Depo at 90-91 ["A: Maybe we took some money in cash out. We transferred some monies to my personal account, to hers. I don't remember.… Q: It has all been spent? A. Oh, yes."] The destination of the other loan proceeds is unknown as the Debtor has produced no financial information from the Colombian subsidiary.

<u>Non-Disclosure of Material Facts to Obtain November 4, 2015 Loan</u>

14.     When applying for the BLUE BANK loan, the Debtor purposefully failed to disclose the false advertising of his products to BLUE BANK. (Caridad Decl. ¶11.)

15.     When applying for the BLUE BANK loan, the Debtor knew that the Colombian government had been investigating his weight loss products for false advertising, and was likely to levy a significant fine on his Colombian company. (Debtor Depo. at 125 [stating he learned of impending fine in mid-2015, prior to the November 2015 loan application].) This was a material issue that should have been disclosed to any lender. (Caridad Decl. ¶12-14; Hane Depo. at 11-12 (Colombian government fine caused all sales to stop and led to the Debtor's Chapter 7 bankruptcy.)

16.     A highly disputed issue is when BLUE BANK learned of the Colombian investigation and fine. When HANE was applying for the BLUE BANK loan in October and November 2015, BLUE BANK did not know about the Colombian investigation or fine prior to disbursing the loan. (Caridad Decl. ¶12-14.) Yet, the Debtor asserts that "everybody in the industry

7

knew about it"; and even that he told Mr. Mezerhane about the Colombian investigation prior to obtaining the BLUE BANK loan. (Debtor Depo at 122-124.) However, Mr. Mezerhane firmly denies that allegation and states that he learned of the Colombian investigation and fine on November 25, 2015 (weeks after the loan was disbursed). (Mezerhane Decl. ¶9; Ex. C [Nov. 25, 2016 email from Jaime Castillo, forwarding press statement about Colombian government fine against the Debtor]; Ex. D [Nov. 26, 2015 email from the Debtor to Mr. Mezerhane regarding the Colombian government fine].)

17. The Debtor's wife, Florencia Hane, does not provide any clarity to this disputed issue of fact. She claims to have first learned about the Colombian false advertising investigation and fine when it was "everywhere" and several people were calling her, but she does not remember the dates. (Depo Florencia Hane at 114-119.) However, she also states she remembers HANE "traveling before trying to fix all of that... trying to avoid this" and HANE taking to Mr. Mezerhane about this investigation "**after the loan**." (Depo. Florencia Hane at 116.) At another point in her deposition, she states "when Blue Bank gave the money, the fine was already everywhere," but "I cannot tell you exactly the date, if it's November, if it's August." (Depo Florencia Hane at 123-214.)

18. In the November 4, 2015 commitment letter for a $300,000 loan, the Debtor represented to BLUE BANK that there were no legal proceedings against the company. (Ex. 10 [commitment letter]; Caridad Decl. ¶15; Debtor Depo. at 180.) HANE further stated that he and his company had "no knowledge of any material liabilities, contingent or otherwise" that were not previously disclosed to BLUE BANK. (Ex. 10 [commitment letter].) These statements were false, as HANE knew of the Colombian investigation and fine and failed to disclose them to BLUE BANK.

19. The Debtor made the above false statements and material omissions with the intention and purpose of deceiving BLUE BANK.

20. BLUE BANK justifiably relied on such representations by the Debtor.

21. BLUE BANK sustained loss and damage as the proximate result of the representations having been made by the Debtor. (Caridad Decl. ¶16.)

### III. MEMORANDUM OF LAW

#### A. Summary Judgment Standard

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"Moreover, the moving party has the burden of meeting this exacting standard." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)). Applying this standard, the Eleventh Circuit explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.

*Id.* (internal citations omitted).

#### B. *Appling* Does Not Preclude BLUE BANK's Section 523(a)(2)(A) Claim.

Under Section 523(a)(2)(A), a debt for money is not dischargeable if the money was "obtained by - (A) false pretense, a false representation or actual fraud." The traditional elements of non-dischargeable fraud under section 523(a)(2)(A) are:

>(1) the debtor made a false representation, other than an oral statement respecting the debtor's financial condition, with intent to deceive the creditor; (2) the creditor actually relied on the misrepresentation; (3) the creditor's reliance was justifiable; and (4) the misrepresentation caused a loss to the creditor.

*See In re Bilzerian*, 100 F.3d 886, 892 (11th Cir. 1996); *In re Johannessen*, 76 F.3d 347 (11th Cir. 1996); "This exception is in keeping with the basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 201 L.Ed. 2d 102 (June 4, 2018) (*quoting Cohen v. de la Cruz,* 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L.Ed. 2d 341 (1998)).

The Debtor's Motion for Partial Summary Judgment is directed only at BLUE BANK's Count No. 1 under section 523(a)(2)(a), and relies entirely on a recent Eleventh Circuit case affirmed by the Supreme Court. *Appling v. Lamar, Archer & Cofrin, LLP* (*In re Appling*), 848 F.3d 953, 956 (11th Cir. 2017), *aff'd* at 138 S. Ct. 1752 (June 4, 2018). Under *Appling*, which resolved prior circuit splits, where a debtor makes a misrepresentation about even a single asset of the debtor and its value, it constitutes a representation about the financial condition of the debtor and must be in writing to challenge discharge under Section 523(a)(2).

However, this *Appling* holding does not justify summary judgment on BLUE BANK's entirely different Section 523(a)(2)(A) claim for several independent reasons.[2] BLUE BANK is not claiming that the dischargeability of the Debtor's debt should be denied because of a materially false, and entirely oral, statement respecting an insider's financial condition. Instead, BLUE BANK's claim it that HANE created an image of a successful multinational company by *false*

---

[2] *Appling* dealt with **findings of fact in a judgment after a trial** where "the bankruptcy court found that Appling made false oral statements about his anticipated tax refund to receive an extension of credit." 848 F.3d at 957; *see also Lamar, Archer & Cofrin, LLP v. Appling*, 527 B.R. 545 (N.D. Ga. Mar. 10, 2015) (procedural background). That is not case here, where there has been no finding that misrepresentations were only oral, and the actual misrepresentations as well as the Debtor's fraudulent intent are genuine issues of material fact that preclude summary judgment.

*pretenses* and *failure to disclose* critical, material facts. False pretenses as used in Section 523(a)(2)(A) is described very broadly:

> False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive. . . . It is a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor. . . . Silence or concealment as to a material fact can constitute false pretenses.

*Taylor v. Wood (In re Wood),* 245 Fed. Appx. 916, 918 (11th Cir. Aug. 21, 2007) *(quoting FCC National Bank v. Gilmore (In re Gilmore),* 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998)). "A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived an misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor." *Evans v. Dunston*, 117 B.R. 632, 641 (D. Colo. Bankr. 1990), *reversed on other grounds* at 146 Br. 269 (D. Colo. 1992). In *Evans*, the debtor through his conduct misled his mother to thinking he had a liquor license and owned restaurants, and the mother advanced money based on that false pretense.

As one bankruptcy court explained false pretenses:

> [W]here the debtor has possession of material information that may bear on the creditor's willingness to extend a financial accommodation to him; knows that the creditor would consider it; fails to disclose it; create or allows the creation of the semblance of a very different state of affairs; and reinforces that imposture by the withholding of the material information the debtor has acted in a way to trigger section 523(a)(2)(A).

*Check Control, Inc. v. Anderson*, 181 B.R. 943, 951 (D. Minn. 1995). In that case, the debtor wrote bad checks but created an atmosphere at the casino where the casino justifiably relied on the false pretenses that he had funds to cover the checks. The bankruptcy court also found that the casino's reliance on the debtor's tacit representations was justifiable even though it had a check verification service, and the ability to confirm sufficient funds. *Id.* at 952.

Here, the Debtor fraudulently concealed the material facts that his products were bogus and falsely advertised, that he did not have operations in the countries he claimed and that there was an ongoing Colombian government investigation into HANE's false advertising that, within a few months, would lead to the shutdown of HANE's business operations, and a default on the $300,000 BLUE BANK loan. If the Debtor insisted on puffing about how great his companies were, then he had a duty to disclose what he knew about the false advertising and Colombian investigation.

Moreover, unlike the factual findings in *Appling* of solely "oral" misrepresentations, BLUE BANK, including in its complaint, interrogatory responses and at its Rule 30(b)(6) deposition, has pointed to multiple written misrepresentations that it relied upon in order to loan $300,000 to HANE's 100% owned company, for which HANE signed a personal guaranty in November 2015. As explained in the the Statement of Material Facts above, these include:

(a) an October 2015 email from HANE to Nelson Mezerhane (his referral to BLUE BANK) sent immediately after asking for a BLUE BANK loan that references his alleged companies and sales in multiple countries, as well as the website address "www.jorgehane.com":

> "JHL is a company leader in the weight loss industry with product sales in approximately 450 drugstores in 9 countries in Latin America (Argentina, Colombia, Peru, Costa Rica, Honduras, Nicaragua, Panama, Guatemala and El Salvador…
> One of them, a dietary supplement called Reduce Fat-Fast, has been sold thru direct TV in 103 countries and has helped millions of people around the world achieve their desired weight loss…
> As a result of the changing of the economy, recently JHL decided to create new additional products…dietary supplements, full line of low calorie shakes, laxatives, abdominal creams for men and various creams and gels for women. A total of 25 products. www.jorgehane.com" [ECF 54-7]

(b) October-November 2015 website representations by HANE, which were accessed by and relied upon by BLUE BANK in its reasonable due diligence, which similarly state that the falsely advertised products are being sold through tens of thousands of pharmacies in specific countries;

12

(c) the November 2015 "commitment letter" signed by HANE in order to obtain the funds from BLUE BANK, including the affirmative representation that there are no claims pending and that there are no material contingencies that have not been disclosed to BLUE BANK[3].

BLUE BANK asserts that these misrepresentations are about the Debtor and his overall situation vis-à-vis undisclosed legal proceedings and false representations about his products (not that he falsified the amount of a tax return, or submitted bogus financial statements), the Debtor asserts that these are actually "respecting the debtor's financial condition" and require a writing under section 523(a)(2)(B). Even if that were true, which BLUE BANK disputes, BLUE BANK has identified written misrepresentations that would satisfy that tougher rule. However, these are not representations about financial condition; rather, it was the Debtor's overall effort to get a loan for his company using false pretenses and fraud.

###    C.    Reliance and Causation Are Questions for Trial.

Further, there are remaining disputed facts as to the other elements of "actual fraud" here outlined in *In re Bilzerian*, 100 F.3d at 892: (1) whether the debtor made false representations with the intent of deceiving the creditor; (2) whether the creditor justifiably relied on such representations; and (3) whether the creditor sustained a loss as the proximate result of the representations.

In the Motion, the Debtor argues that BLUE BANK cannot prove "proximate cause" or "reasonable reliance"[4] for a fraud claim based on the October 29, 2015 email that the Debtor sent to

---

[3] Blue Bank Deposition at 84: Q: Aside from Exhibit 3 (the October 2015 email from HANE), and the commitment letter, were there any other documents furnished to Blue Bank which were false?" A: The commitment letter in this exhibit and the information that he gave us about his products."

[4] The applicable standard for BLUE BANK's Section 523(a)(2)(A) claim is actually the lower standard of "justifiable reliance"; "reasonable reliance" applies to Section 523(a)(2)(B) claims. *See Field v. Mans*, 516 U.S. 59 (1995) (explaining the difference between the two standards, and the source of "justifiable reliance" in common law fraud).

Mr. Mezerhane. (See Mot. At 14-15) This is yet another genuine issue of material fact. While it is undisputed that Mr. Mezerhane *himself* did not conduct any due diligence, lending or underwriting for BLUE BANK (Mezerhane Decl. ¶2-7), it is equally undisputed that the Debtor asked Mr. Mezerhane to refer him to BLUE BANK, and that the Debtor immediately sent misleading information about himself and his company to Mr. Mezerhane. (Mezerhane Decl. ¶3.) BLUE BANK asserts that the Debtor had the intention of Mr. Mezerhane forwarding the email and attachment to BLUE BANK, and a reasonable juror could find the same based on the totality of the circumstances.

The Debtor similarly argues that BLUE BANK could not have relied on websites – even though those websites were authored and maintained by the Debtor and specifically referenced in the Debtor's communications to BLUE BANK. BLUE BANK disagrees, and states that a reasonable trier of fact could find, based on the totality of circumstances, that BLUE BANK was entitled to reasonably rely on the Debtor's online representations, which turned out to be false.[5]

## CONCLUSION

As with most fraud claims, there are genuine issues of material fact in dispute that preclude summary judgment. BLUE BANK is not bringing a claim about the value of a particular financial asset like *Appling*, but rather false pretenses and misleading information about the scope of the Debtor's operations and the fraudulent omission that his products were falsely advertised, and were the subject of an impending regulatory fine. As these are questions for the finder of fact, BLUE BANK respectfully requests that the Court deny the Debtor's partial motion for summary judgment on BLUE BANK's section 523(a)(2)(A) claim.

---

[5] In Debtor's conclusion, he states that he provided BLUE BANK "with a financial statement, tax returns and extensive financial information." (Mot. at 16). There is no citation to any such evidence.

Dated: August 3, 2018                                    Respectfully submitted,

                                                  /s/ *Brian J. Recor*
                                                  Brian J. Recor, Esq.
Florida Bar No. 118392
RECOR RIEBER, P.A.
*Attorney for Plaintiffs*
701 Brickell Avenue, Suite 2280
Miami, FL 33131
Phone: (305) 988-8002
Email: brian@recorrieber.com

Thomas R. Lehman, Esq.
Florida Bar No. 351318
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
*Attorney for Plaintiffs*
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
Phone: (305) 403-8788
Email: trl@lklsg.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on the Debtor's counsel, Michael S. Hoffman, on August 3, 2018.

                                                  /s/ *Brian J. Recor*
                                                  Brian J. Recor