**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                                          Case No. 16-25954- LMI
                                                                Chapter 7
JORGE HANE,

_____Debtor._____/

COLTEFINANCIERA, S.A. and                    Adv. Pro. No. 17-01234-LMI
BLUE BANK INTERNATIONAL, N.V.,

      Plaintiff,

v.

JORGE HANE,

_____Defendant._____/

**REPLY TO BLUE BANK'S RESPONSE TO MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

    Defendant Jorge Hane ("Defendant") files this Reply to Plaintiff Blue Bank International, N.V.'s ("Blue Bank") Response (the "Blue Bank Response") (D.E. #61) to Defendant's Motion for Partial Summary Judgment (the "Summary Judgment Motion") as to Count I of Blue Bank's *Amended Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge pursuant to Sections 523 and 727 of the Bankruptcy Code* and states as follows:

    **I.    *APPLING* IS FATAL TO BLUE BANK'S DISCHARGEABILITY CLAIM**

    In its Amended Complaint and in the Blue Bank Response, Blue Bank repeatedly insists that it is pursuing its dischargeability claims under §523(a)(2)(A). To the extent there is any doubt Blue Bank has proceeded exclusively under §523(a)(2)(A) and not under §523(a)(2)(B), such doubt is readily eliminated by a simple review of Blue Bank's pleadings. In the Amended Complaint, the Plaintiff expressly cites §523(a)(2)(A) as the statutory basis for Count I. *Amended Complaint*, ¶17. In the introduction to the Blue Bank Response, Blue Bank states "[i]n Count I, Blue Bank alleges that the Debtor obtained a $300,000.00 loan based on false pretenses and material omissions under §523(a)(2)(A)," *Blue Bank Response*, p.2, and that "there are genuine issues of material fact that

preclude summary judgment on this fraud count under Section 523(a)(2)(A). *Id*. at p.3. Blue Bank's claim under Section 523(a)(2)(A) further relies upon the standard associated with that section. By way of example, Blue Bank asks the Court to apply a "justifiable reliance" standard applicable to §523(a)(2)(A) fraud claims rather than the "reasonable reliance" standard applicable to §523(a)(2)(B) fraud claims. *Id*. at p.13, n.4. In short, Blue Bank has repeatedly elected to seek a nondischargeability judgment against the Defendant exclusively under §523(a)(2)(A) and the Court should evaluate the validity of its claims solely under this subsection.

Blue Bank's §523(a)(2)(A) claims fall apart when analyzed under *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752 (2018) which affirmed 11th Circuit precedent and held that debts incurred by use of statements respecting the "financial condition" of a bankruptcy debtor cannot proceed under §523(a)(2)(A). *Appling*, 138 S. Ct. at 1758-59. All of the allegedly false statements referenced in Blue Bank's affidavit in opposition to the Summary Judgment Motion (the "Zambrano Affidavit") relate to the "financial condition" of the Debtor.  The (a) the October 29 Email[1] to Mezerhane; (b) the November 4 Emails; and (c) the Blue Bank Google Research all clearly are with respect to the financial condition of the Debtor.  As addressed below the new allegation in the Blue Bank Response that the Commitment Letter contained false statements is on its face a statement in writing respecting the "financial condition" of the Debtor.

Indeed, the Zambrano Affidavit provides the following overview of Blue Bank's position: "in sum, Blue Bank asserts based on the evidence in its business records that the Debtor made misleading representations to Blue Bank *about himself and his companies* in order to obtain a $300,000 loan to JorgeHane Laboratories Corp." Zambrano Affidavit, ¶4 (emphasis added). *Appling* forecloses Blue Bank's ability to bring these claims under §523(a)(2)(A) since they are all "statements in writing respecting the debtor's financial condition", and this alone should be sufficient to grant the Summary Judgment Motion.

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Summary Judgment Motion.

The Blue Bank Response's efforts to shoehorn its claims into §523(a)(2)(A) are not persuasive. Blue Bank states that it

> is not claiming that the dischargeability of the Debtor's debt should be denied because of a materially false and entirely oral statement respecting an insider's financial condition. Instead Blue Bank's claim it [SIC] that Hane created an image of a successful multinational company by false pretenses and failure to disclose material facts…Here, the Debtor fraudulently concealed the material facts that his products were bogus and falsely advertised, that he did not have operations in the countries he claimed and that there was an ongoing Colombian government investigation into Hane's false advertising…

*Blue Bank Response*, p. 11-12 (emphasis omitted). Blue Bank would thus ask the Court to believe that under *Appling*, a false statement respecting a debtor's financial condition triggers application of §523(a)(2)(B) but the creation of a false image respecting a debtor's financial condition does not. This is a nonsensical statutory construction and would lead to absurd results.[2] It certainly does not achieve the policy goal of §523(a)(2)(B) to "promote accuracy and predictability in bankruptcy disputes that often take place years after the facts arose." *Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953, 960 (11th Cir. 2017).

Finally, in a last-ditch effort to salvage its dischargeability claims, Blue Bank suggests that even if the Defendant is correct that Blue Bank cannot proceed under §523(a)(2)(A), "Blue Bank has identified written misrepresentations that would satisfy that tougher rule [of §523(a)(2)(B)]." *Blue Bank Response*, p. 13. This is far too little and far too late. As extensively detailed above, Blue Bank has plead and argued its case under §523(a)(2)(A) from very beginning of this adversary proceeding and attempts to pivot only now when faced with a summary judgment motion fatal to its cause. It had ample opportunities to amend its pleadings and state a cause of action traveling under an applicable

---

[2] For example, under Blue Bank's proposed construction, a borrower who exaggerates his wealth by driving fancy cars is exposed to §523(a)(2)(A) treatment but a borrower who states "I drive fancy cars" gets the benefit of heightened §523(a)(2)(B) treatment. This makes no sense.

subsection. Blue Bank elected not to do so.[3] The Court should not countenance this eleventh hour salvage operation as discovery is now closed, the deadline to bring claims contesting dischargeability has long since passed, a summary judgment motion has been filed and the case is nearing trial.

## II. THE COMMITMENT LETTER

The Summary Judgment Motion relies upon the Blue Bank Interrogatory Response in which Blue Bank identified three alleged written misstatements by the Debtor: (a) the October 29 Email to Mezerhane; (b) the November 4 Emails; and (c) the Blue Bank Google Research. The Blue Bank Response now introduces a fourth allegedly false writing in the form a November 4, 2018 Commitment Letter (the "Commitment Letter") which is attached as an exhibit to the Blue Bank Response. This Commitment Letter contains the following alleged relevant representations:

> iii. That since the date of the last financial statements submitted to the Bank, there has been no material adverse changes in the financial condition of the Borrower, contingent or otherwise, which are not reflected in the last Balance Sheet submitted to the Bank.
>
> iv. That at the time of the signing of this letter, there is no litigation or other proceeding pending against the Borrower and that the Borrower is not in default with any order, injunction, decree or demand of any Court, Tax Authority or Governmental Agency.

*Commitment Letter,* p. 3. Blue Bank alleges that these were false written misrepresentations which should except Blue Bank's claim from discharge.

The Court should reject this argument for a number of reasons. First, Blue Bank did not identify the Commitment Letter as containing false representations in its Amended Complaint or in the Blue Bank Interrogatory Response. Specific reference to the Commitment Letter in the Amended Complaint would have been required to satisfy the Fed.R.Civ.P. 9(b) pleading requirements for fraud claims. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (explaining

---

[3] For the reasons detailed below, the Defendant believes this was a conscious choice by Blue Bank because the alleged written misrepresentations are trivial and Blue Bank will never be able to prove elements such as reasonable reliance and proximate cause.

Rule 9(b) "requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud."). Identification of the Commitment Letter was also required to have been included in the Blue Bank Interrogatory Response. In light of the foregoing, the Court should not consider the Commitment Letter as a basis to deny summary judgment. *See City of New Orleans v. AMBAC Assur. Corp.*, 2014 U.S. Dist. LEXIS 172508, *6 (E.D. La., December 12, 2014) (excluding long known affirmative representations supporting fraud claim when not referenced in plaintiff's complaint due to lack of compliance with Rule 9(b)); *see also* Fed.R.Civ.P. 37(c) (providing for the exclusion of evidence not disclosed in interrogatory responses); *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 595 F.3d 1203, 1213-14 (11th Cir. 2010) (upholding trial court's exclusion of evidence based on plaintiff's unjustified disclosure failure in interrogatory response).

Second, there is no indication in the Blue Bank Response or Zambrano Affidavit explaining why these statements are false. According to Blue Bank, there was a governmental investigation into JorgeHane Laboratories Corp.'s advertising practices at the time the Commitment Letter was signed. *Blue Bank Response*, p. 2. Blue Bank, correctly, does not allege that an actual governmental proceeding had been initiated or that a fine had actually been issued. Accordingly, the Commitment Letter was entirely accurate: at that time, there was no "litigation or other proceeding pending against" JorgeHane Laboratories Corp. and Jorge Hane Laboratories Corp. was not "in default with any order, injunction, decree or demand of any Court, Tax Authority or Governmental Agency." Also, "since the date of the last financial statements submitted to [Blue] Bank" there had "been no material adverse changes in the financial condition of [Jorge Laboratories Corp.], contingent or otherwise, which are not reflected in the last Balance Sheet submitted to the Bank."[4] There is no factual contention in the Blue Bank

---

[4] Neither the Blue Bank Response nor the Zambrano Affidavit state when JorgeHane Laboratories Corp. provided its last financial statement nor is such a financial statement attached. Based on deposition testimony, it appears this occurred in late October 2015 – just days before execution of the Commitment Letter. *See Blue Bank Deposition*, 43:23-25. Blue Bank has provided no evidence to support a contention that there was a material change in JorgeHane Laboratories Corp.'s financial status during this short window of time.

Response or the Zambrano Affidavit to the contrary. Accordingly, the Commitment Letter should not defeat summary judgment.

### III. REASONABLE RELIANCE AND PROXIMATE CAUSE

Blue Bank alleges that the elements of reasonable reliance and proximate cause are questions for trial and should not be considered at the summary judgment stage. However, as stated in the Summary Judgment Motion, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995). For Blue Bank to prevail on a §523(a)(2)(B) claim (should the Court even consider a claim under this subsection), it would need to show that it loaned the Defendant $300,000 based on (a) a one sentence email to an individual not involved in due diligence that contained an attachment with a two paragraph overview of the Debtor's business (the October 29 Email); (b) the image on the Defendant's email signature (the November 4 Emails); and (c) Blue Bank's credit manager's online research relating to the Defendant (the Blue Bank Google Searches). Blue Bank will need to prove that its reliance on this material was reasonable and the proximate cause of its decision to lend $300,000 to JorgeHane Laboratories Corp.

The Defendant submits that no reasonable trier of fact could rule in Blue Bank's favor on this claim. Mr. Zambrano (Blue Bank's Rule 30(b)(6) designee) testified at his deposition that Blue Bank has an extensive lending portfolio and holds over $70 million dollars in assets. *Blue Bank Deposition*, 18:17-19:7. Blue Bank has a five-member credit committee, *Id*. at 26:8-26:10, and Mr. Zambrano outlined an extensive, multi-step due diligence and verification process which Blue Bank undertakes when considering a credit application. *Id*. at 21:23-27:25. It is simply inconceivable that the written materials referenced by Blue Bank will satisfy the elements of reasonable reliance and proximate cause.

### IV. THE ZAMBRANO AFFIDAVIT IS INADEQUATE BECAUSE MR. ZAMBRANO LACKS PERSONAL KNOWLEDGE

Finally, the Zambrano Affidavit is inadequate to oppose the Summary Judgment Motion, particularly as it pertains to Blue Bank's claims of reasonable reliance and proximate cause. The

Zambrano Affidavit states that Mr. Zambrano joined Blue Bank in 2006. *Zambrano Affidavit,* ¶2. This appears to be a typographical error as Mr. Zambrano testified at his deposition that he was first employed by Blue Bank in 2016. *See Blue Bank Deposition*, 7:9-7:11 ("Q. To be clear, you began your employment with Blue Bank in August of 2016? A. Correct."). As a result, Mr. Zambrano has no personal knowledge whatsoever regarding Blue Bank's decision to loan money to JorgeHane Laboratories Corp. in 2015. This was conceded through the following exchange at his deposition, where Mr. Zambrano testified that all of his information on the matter derives from reviewing the loan file and speculating as to what information Blue Bank likely relied on:

> Q. Do you have knowledge about the process that Blue Bank went through in order to decide to give those loans?
>
> A. Well, I was not there in 2015 when the loan was approved, but it must follow the established procedure, besides -- also besides by the regulating entity.
>
> Q. Okay. So is it fair to say that you have knowledge about the procedures of Blue Bank generally in considering loans?
>
> A. Correct.
>
> Q. But not specifically about the process that went into approving loans to Mr. Hané's businesses?
>
> A. As a managing director, I knew – I mean, I checked the files.

*Blue Bank Deposition*, 13:8-24.

Fed.R.Civ.P. 56(c)(4), made applicable to this proceeding by Bankruptcy Rule 7056, requires that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Under the 'personal knowledge' standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which is testified to." *FTC v. Home Assure, LLC*, 2010 U.S. Dist. LEXIS 49875, *3 (M.D.

Fla. April 26, 2010) (internal citation omitted); *see also Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315-16 (6th Cir. 1989) (holding that statements in affidavits that are not based on personal knowledge and personal observation do not contain facts that are admissible evidence for summary judgment purposes). In reviewing motions for summary judgment, courts may not consider affidavits or declarations that do not comply with these requirements. *El Deeb v. Univ. of Minnesota*, 60 F.3d 423, 428 (8th Cir. 1995)

As noted above, all Mr. Zambrano knows is that the October 29 Email, the November 4 Emails and the products of the Blue Bank Google Research were found in Blue Bank's loan file for JorgeHane Laboratories Corp. However, he does not have any personal knowledge as to the role these documents played in Blue Bank's credit decision in 2015 and cannot sufficiently attest to the fact that these documents were the proximate cause of Blue Bank's damages or that Blue Bank reasonably relied on them. It is entirely possible, for all Mr. Zambrano knows, that the Blue Bank credit manager who actually evaluated the JorgeHane Laboratories' application in 2015 placed these documents in the loan file but entirely disregarded them while performing Blue Bank's due diligence. Accordingly, Mr. Zambrano's affidavit fails to satisfy Rule 56 and should be disregarded by the Court.

## V.  CONCLUSION

The Court should grant the Summary Judgment Motion.

HOFFMAN, LARIN & AGNETTI., P.A.
Counsel for Defendant
909 North Miami Beach Blvd., Suite 201
North Miami, FL 33162
Tel: (305) 653-5555
Fax: (305) 940-0090
Email: mshoffman@hlalaw.com

/s/ Michael S. Hoffman
Michael S. Hoffman
Florida Bar No.: 41164

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF to Brian J. Recor, Esq. on August 17, 2018.

<u>/s/ Michael S. Hoffman</u>
Michael S. Hoffman